Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. We have a nice, big courtroom for you here. You can spread out, and you don't even have to take the middle seat, so that's great. Before we go to our oral argument, we have a number of cases to submit on the briefs of record officially. They are Gomez-Sanicio v. Garland, HP Tower Investments, LLC v. Nationwide Mutual Insurance Company, Fitness International, LLC v. DDRM-Hill, ACOM v. Zurich American Insurance Company, and Costani Menswear, Inc. v. Amguard Insurance Company. Those matters are now officially submitted. We will now hear argument in the first case of the day, which is Barrera-Cordova v. Garland. So I believe that Mr. Roncio is first up. Is that you? Yes, Your Honor. Very well. Please proceed. Mr. Court, my name is Frank Roncio. I'm representing the petitioner, Lujan Barrera. The agency used their statutory standard as an administrative agency under the IMA, stating that findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. We both find in this case the same standard of review, a fairly errorous standard for findings of fact and all other issues of law, judgment, and discretion under a denominal standard. Counsel, I thought that you stipulated in the appeal that this was being reviewed under substantial evidence. Am I mistaken? No, Your Honor. So you're changing your opinion? I'd like to change my opinion, because the findings stated in this opinion that the past physical harm was of such severity that it rose to the level of persecution, and that the same conclusion would be reached under any standard of review. What are you reciting for that again, please? O-N-R. I know other circuits, some others have. We certainly have not. What's your best argument that we should? Well, the argument would be the case that said that acts that constitute persecution for asylum is a legal question to be reviewed by a denominal. And who said this? Did we share? S-I-N-H-G-H. Is that a published opinion? I'm sorry, I didn't hear you. Is that a published opinion? Yes, Your Honor, it is. And what's the citation? I'm sorry, Your Honor, I don't have the citation. And that's one of our cases, you say? Yes, it is, Your Honor. And you're saying that that, you're talking about Fon versus Garland, is that what you're talking about? I'm talking about the fact that the standard of review is in much disagreement between the circuit courts and the circuit. And that sometimes an act that should be reviewed as a fact, it constitutes the theme of the legal argument, and it should be reviewed de novo. Well, let's assume, arguendo, that you're correct, that we should adopt a new standard, i.e. a de novo standard. Why would this case be particularly compelling? You have a situation where the petitioner was not physically harmed, neither was his father. His father was extorted. He paid, I think, six different payments, but it was not a situation where it bankrupted him or so, and he was able to continue doing business. And once Barrera left, they left him entirely alone. Why is this compelling? It's not like it's a murder case or a rape case. Why, even if we were reviewing this de novo, why would this case, why would the results change? Well, it's, you know, it's one of these established imputed political opinions. The trial court did find that there was imputed political opinion, and, of course, they... But where's the nexus? Where's the nexus? Nexus. Are you saying that they extorted the father based upon the political opinion of the son? Is that what you're saying? Yes. And where's the evidence for that? Someone to the... I'm sorry, I'm not hearing you. Someone to the FMLN meetings, and he voiced his opposition to those meetings. I understand, but when these people extorted the money, did they make it clear they were doing that because the son had gone to that meeting and expressed a political opinion? You're cutting out. I'm sorry. You have to... Oh, I'm sorry. First of all, armed people showed up at his family's home and demanded money. Did they say, we're here because your son appeared at a political meeting? That's... Don't substantiate that, but... Then where's the nexus? You've got to have a nexus to a PSG. Where is it? Because the central reason the persecutors would have hounded him is because he was at the meeting. He was arrested by the police. The police took down his address, and they knew where he lived. But they wanted money. This was a criminal gang. They wanted money. They got money. I don't remember seeing anything in the record that they said each time they asked for the money, we're doing this because your son appeared at a political gathering. What were in the record? Does it say what you're alleging? There's... It's so coincidental that once he was arrested, they came to the family's house. I think that you could put those two facts together and see. Counsel, isn't the answer that the IJ found a nexus and the BIA did not address that issue? Yes. Because the IJ said there was also a nexus in this court's opinion to that political opinion, and then the BIA just addressed the rise to the level of persecution issue and didn't address nexus. So we don't have nexus in front of us, do we? No. But that's what, you know, that leads to the theme that I have, is that the trial court here did not give the petitioner sufficient notice that it required collaborative declarations of the father and the family and other documentation to establish. Farnsboro Business in El Salvador. This is exactly the same thing that the opinion came out in front. The IJ could not rely on the absence of cooperative declarations of Farns' co-worker and family members regarding what happened to him in Cameroon, citing that the judge failed to give fine advance notice of what additional evidence was required in an opportunity to produce it. Counsel, if I may interrupt. So if we, going back to the standard of review, if we adopt a de novo standard here, we would basically have to set aside all of our precedent on what constitutes persecution, right? Because, I mean, there's not always any way to reconcile any of our case law if we use a de novo standard, because there have been plenty of cases where people have been physically beaten quite badly, and we say there's no persecution. And here he hasn't been physically harmed. As far as the de novo standard is, then I would advocate a less differential substantial evidence standard and show that the extortion of the money and the will and ability to carry it out, these attackers knew who the petitioner was who had persisted. Counsel, we're not hearing you, but do you want to save it? You don't have much time left. Do you want to save any time for rebuttal? Yes, Your Honor. Okay. Well, then we'll hear from the government, and then we'll give you a minute to respond. Good morning. Good morning, General Williams, on behalf of the government. Substantial evidence review remains the standard of review for past persecution findings and should be applied in this case. Whether the court is considering these cases in Fon Flores, Molina, or Singh, pursuant to Elias Zacharias, the standard of review that should be applied by this court to the agency's determination that harm petitioner's experience did not rise to the level of persecution is substantial evidence. Moreover, Congress codified in Fon some of the separate opinions, including my own, pointed out, we've actually said completely contradictory things on that question. We have a line of cases that says it's subject to de novo review, and we have a line of cases that says it's subject to substantial evidence review. And normally what we would do in that scenario is potentially call the case on bond, but we can only do that in a case where it makes a difference. Does the standard of review make a difference here? The standard of review in this case, one, doesn't make a difference, but this case is fact-driven. And so this court should follow the substantial evidence review that was laid out in Elias Zacharias, and it was codified by Congress. We should assume, as in Fon, arguendo, that even if de novo applies, that the government would win. If we're avoiding the question, we wouldn't do it the other way and apply substantial evidence. Well, in Fon, Judge Graber saw persecution as a mixed question of law and fact. Yet Congress, in essence, has mandated that it be a purely factual issue by codifying the substantial evidence. So be that treated as a factual issue or as a legal issue? Well, this court should not confuse itself with administrative bodies. The answer to that question is that they treat it as a legal issue, right? Not necessarily. The board is looking to determine what persecution is, and it's using this court's cases to make that determination. The Court of Appeals should consider facts and ask whether it is compelled to view suffering as persecution. And when they're looking at facts, you can look at the administrative record. The administrative record clearly outlines the facts. The legal issue is not so easy to find. But in the ASB case, the board said that they applied de novo review to the legal question of whether conduct rises to the level of persecution. Am I correct? I'm sorry, which case was this? This was the ASB case that I cited in Fon. It says the clearly erroneous standard, therefore, does not apply to the application of legal standards, such as whether the facts established by an alien amount to past persecution. So the board treats it as a legal question. It reviews de novo. But then when it crosses the line and comes to us, it becomes a type question. What the Attorney General has charged the board as an administrative appellate issue finding is one thing. The board is charged with determining a whole host of things, including the facts, the record, whether or not the immigration judge committed legal error. This court has been charged by Congress that what they should look to is the statute and determine whether or not the harm suffered compels a finding of persecution. And so with the Fon decision, there's confusion. Because it's confused the issue by describing a sliding scale of mixed questions of law and fact. The existing substantial evidence allows this court to be compelled to see harm as persecution without relying on that confusing scale. The example that Fon used was a legal question as to whether or not someone who suffered rape is a legal question. Yet the question should not be whether the harmful conduct meets the legal definition of rape, but rather whether the harm incident to rape is persecution. So this court should be looking to determine whether or not the harm that is experienced by petitioners rises to the level of persecution. Bringing it to this case, as you can see my colleague who has written about this in Fon and I think elsewhere, views this as a de novo issue. Let's just say for discussion purposes that we were applying de novo review in this case. What's the government's best argument that whatever standard of review we apply here, there is no persecution? Yes, if you look at the facts of this case, they're pretty simple and there should not be any persecution found. Here the IJ and the board both found that the petitioner failed to show past persecution. The petitioner was never arrested, was never beaten, never harmed, nor harassed by the Salvadoran government. The sole threat came at a meeting in February 2012 when he was escorted to a meeting and he left. Later on, his father was extorted allegedly of money. This took place from 2012 according to the petitioner to 2014. The father never reported this incident to the police. The petitioner then relocated or went back to his home in San Salvador and never experienced any harm post that incident. So here, again, even if you take a de novo review as is suggested possibly in Fon, albeit there was a $30,000 is a lot of money. I mean, suppose we had a society in which the government decided to go after, say, a religious minority and they said, you know, each member of this religious minority has to pay $30,000 a year. Would we consider that to be persecution of that minority? Well, following this court's case law, the amount of money did not impact the change of lifestyle for the petitioner. So the rich members of the religious minority would have no claim, but the poor ones would. Is that the government's argument? No, it is that you look at the facts and determine whether or not it rose to the level of persecution as a totality of the circumstances. But as I read the agency's decision here, they basically would, their view was, well, this family was well off so they could absorb the $30,000 without, you know, much problem. And so it's not persecution. In this instance, the petitioner moved back to San Salvador. He continued to work. He continued to live without being harmed. He didn't suffer whether it was either physical harm or financial harm. He hasn't described any harm whatsoever. So this case is just one very simply where there was not persecution on account of a protected characteristic. Did you go to my colleague's comment in terms of the quantum of extortion? My understanding of our case law is the very thing that you said a few minutes ago, which is basically if the payment of the extortion is not, in effect, ruinous to the person extorted, that plays a role in our consideration of whether there has been persecution. Is that your understanding as well? That's one of the elements that, yes, that the court could look at. I mean, how great is the impact? Is it ruinous? And in this instance, even the petitioner's father, again, they didn't report this incident to the police, but even the petitioner's father continued with farming his orange grove. They continue to reside in El Salvador to this day. They've not been harmed. They continue to live on that same farm, and there's been no incident or indication that their lifestyle has changed or that they've been impacted. So is it the government's position that even if someone advocated the position my colleague does, that this is not the case that should change, that should be considered for changing the standard of review? Correct. That should not be the case at all. Because the facts don't amount to, under either standard, persecution? Exactly. These facts do not amount to it. So in this instance, I would conclude by asking the court to note that the petitioner has not presented a compelling evidence to this court to overturn the board, and just note that the Attorney General stands behind Elias Zacharias, that the standard of review is substantial evidence, and that Congress has codified that compelling evidence standard. And in this case, clearly the court should deny the petition for review. Very well. Any other questions by my colleague? All right. Thank you very much. Thank you. Counsel for petitioner, you have just seconds left. We'll give you a minute to respond if you'd like to. Thank you, Your Honor. Once again, I believe that the trial court erred in not giving their petitioner a chance to supply corroborated evidence from the father and the family because, as you just said, that we have to see how this orange growth business is doing. There's no evidence of what would happen to the respondent if he had to return to El Salvador. But doesn't he bear that burden, though? Doesn't he bear the burden to show that if he returned that he would be persecuted? Yes, he does, Your Honor. But also in Fong, there was a, you know, Judge Collins decided that, you know, the trial court erred in not giving that respondent, I don't know, petitioner, the opportunity in advance notice to provide these corroborated documents. Okay. Other questions by either of my colleagues? All right. Thank you very much to both counsel. The case just argued is submitted.
judges: SMITH, COLLINS, LEE